IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW DESHER AND RYLEE SMYTH, INDIVIDUALLY, AS PARENTS AND NATURAL GUARDIANS OF K.D., A MINOR<br>1039 Towpath Road<br>Hawley, PA 18428<br>      Plaintiffs<br><br>vs.<br>UNITED STATES OF AMERICA,<br>      Defendant | NO. _____ |

## ORIGINAL COMPLAINT

Plaintiffs ANDREW DESHER, RYLEE SMYTH and K.D., a Minor, bring this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674.

## PARTIES

1.1.    This case arises out of bodily injuries caused by covered agents and employees of the United States at the Wayne Memorial Community Health Centers, Honesdale, Pennsylvania.

1.2. Plaintiffs Andrew Desher and Rylee Smyth, and their child K.D., reside in Pennsylvania, within the jurisdiction of this Court.

1.3. K.D. is the biological child of Andrew Desher and Rylee Smyth.

1.4. Defendant is the United States of America, its officers, agents, employees, and representatives.

## JURISDICTION, SERVICE & VENUE

2.1. This Federal District Court has jurisdiction because this action is brought under 28 U.S.C. § 2671–80, commonly known as the Federal Tort Claims Act. This Court has subject-matter jurisdiction because this action is brought pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671-80, which vests exclusive subject-matter jurisdiction of the Federal Tort Claims Act in Federal District Court.

2.2. The United States of America may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the United States Attorney, United States Attorney for the Middle District of Pennsylvania by certified mail, return receipt requested at his office:

> United States Attorney
> ATTN: Civil Process Clerk
> United States Attorney's Office, Middle District of Pennsylvania
> Harrisburg Federal Building and Courthouse
> 228 Walnut Street, Suite 220

   P.O. Box 11754
   Harrisburg, PA 17108-1754

  2.3. Service is also affected by serving a copy of the Summons and Complaint on the Attorney General of the United States, by certified mail, return receipt requested at:

   The Attorney General's Office
   ATTN: Civil Process Clerk
   950 Pennsylvania Avenue, NW
   Washington, DC 20530-0001

  2.4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(e), 1402(b) because the United States of America is a defendant and the acts and omissions complained of in this lawsuit occurred in this judicial district.

## LIABILITY OF THE UNITED STATES OF AMERICA

  3.1. This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts and/or omissions of covered employee, agent and/or servants of the United States of America working for the Wayne Memorial Community Health Centers, while acting within the scope of their office, employment, and/or agency under

circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of Pennsylvania.

3.2. The Defendant United States of America, at all material times, federally funded the Wayne Memorial Community Health Centers (hereafter WMCHC) business entity and Health Center Program grantee under 42 U.S.C. 254b and deemed Public Health Service employees under 42 U.S.C. 233 (g)-(n), with a place of business at 600 Maple Avenue, Honesdale, Wayne County, Pennsylvania. This Health Center receives HHS funding and has Federal Health Service (PHS) deemed status with respect to certain health or health related claims, including medical malpractice claims, for itself and its covered individuals, including covered agents, servants and employees of Wayne Memorial Community Health Centers licensed to and provide healthcare in the Commonwealth of Pennsylvania.  WMCHC is clinically affiliated with Wayne Memorial Health System, Inc.

3.3. The substantive law of the State of Pennsylvania applies to this lawsuit.

3.4. At all material times, Eric Rittenhouse, M.D. was involved in the medical and health care services provided to Plaintiffs at Wayne Memorial Community Health Centers, Honesdale, Pennsylvania and Dr. Rittenhouse was a covered agent, servant, and/or employee of the United States of America, or some agency thereof, and was at all material times acting within the course and scope of such employment.

3.5.    Dr. Rittenhouse, a covered agent, servant, and/or employee of the United States of America, undertook the care and treatment of Plaintiffs. As a consequence of assuming these duties, Dr. Rittenhouse agreed to and/or assumed to provide reasonable and appropriate medical care to Plaintiffs.

3.6.    Dr. Rittenhouse, a covered agent, servant, and/or employee of the United States of America, did breach his duty owing to Plaintiffs by failing to render reasonable, proper and appropriate medical care and treatment and this directly caused and/or increased the risk of harm to Plaintiffs.

3.7.    In 2019, Plaintiffs Rylee Smyth and K.D., a minor, were patients of Dr. Rittenhouse and Wayne Memorial Community Health Centers, Honesdale, Pennsylvania.

## JURISDICTIONAL PREREQUISITES

4.1.    Pursuant to 28 U.S.C. §§ 2672 and 2675(a), the claims set forth here were filed with and presented administratively to the Department of Health and Human Services on July 14, 2020. Receipt of the claims was acknowledged by the Department of Health and Human Services on July 21, 2020.

4.2.    Each Form 95 administratively presented to the United States stated a "sum certain" of 100 million dollars.

4.3.     To date, the United States has not finally denied the Plaintiffs' claims in writing. Greater than six (6) months has passed since presentation of these claims.

4.4.     Because greater than six (6) months have passed since presentation of these claims, the claims are deemed denied pursuant to 28 U.S.C. § 2675.

4.5.     Accordingly, Plaintiffs have complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this suit.

## FACTS

5.1.     This is a Federal Tort Claim Action for monetary damages sustained by Plaintiffs arising out of the personal injuries to K.D., a minor, as a result of substandard—and therefore negligent—medical and hospital care by Eric Rittenhouse, M.D. a covered agent, servant, and/or employee of the United States of America, and the Wayne Memorial Community Health Centers, Honesdale, Pennsylvania starting April 10, 2019.

5.2.     On April 10, 2019, Plaintiff Rylee Smyth was 41 2/7 weeks pregnant when she visited her OB/GYN, Dr. Rittenhouse, at his office. Dr. Rittenhouse noted spontaneous rupture of membranes (SROM) and sent her to Wayne Memorial Hospital for admission and delivery.

5.3. Plaintiff Rylee Smyth arrived at Wayne Memorial Hospital at approximately 12:58 pm and was admitted to the labor and delivery unit. Dr. Rittenhouse was her attending obstetrician. Her contractions were every 1-2 minutes and she was noted to be 3 cm dilated, 90% effaced with vertex presentation at -2 station (3/90/-2).

5.4. At 15:31 pm (3:31 p.m.), continuous fetal monitoring was ordered. Fetal monitoring allows the healthcare providers to evaluate how the baby is tolerating labor.

5.5. At 15:32 pm Pitocin was ordered. Pitocin is a medication used to induce or augment contractions.

5.6. An exam at 19:48 pm, showed that Rylee Smyth had progressed to 5/90/-2.

5.7. At 20:00 pm, there is evidence of tachysystole (contractions that are excessively frequent with inadequate resting interval between contractions).

5.8. There is evidence of fetal intolerance of labor on the fetal monitoring strip at 20:00 pm with a Category II fetal heart rate tracing with variable and early decelerations.

5.9. At 22:53 pm, over 9 hours into her labor, Dr. Rittenhouse reviewed the fetal monitoring strip that documented persistent decelerations (fetal heart rate drops below baseline) and performed an exam. Rylee Smyth had progressed to 8/100/0.

5.10.    From shortly after midnight on April 11, 2019, through approximately 01:30am, the fetal monitoring strip showed prolonged and repetitive decelerations and decreasing fetal heart baseline heart rate. None of these findings are positive for the well-being of the baby.

5.11.    Despite continued evidence of fetal intolerance of labor, Dr. Rittenhouse did not move to a c-section delivery.  Dr. Rittenhouse chose to continue the labor and decided to perform a vacuum extraction to deliver the baby.  (During a vacuum extraction a suction cup is placed on the baby's head. The doctor then creates suction through the use of a vacuum and provides traction on the baby to guide it out of the birth canal.  The amount of suction applied is under the sole control of the physician).

5.12.    At 1:44 am, Dr. Rittenhouse placed a suction cup on baby girl K.D.'s, tiny head.  He then attached a Kiwi vacuum to the suction device.  With a Kiwi vacuum, the doctor is the one who regulates the amount of suction applied.  Dr. Rittenhouse then applied the suction to the baby's head for ten (10) pulls/tractions.  During this time period from 1:44 am and 2:09 am, there were four (4) pop-offs.  (Popoffs are sudden cup detachments.  It is widely accepted by the Kiwi vacuum manufacturer and the obstetrical profession that the vacuum should not be continued after there have been 4 failed pulls/tractions and 2 pop-offs. See attachment.)

5.13.    Specifically, the first pull was performed at 1:45am.

5.14.    The 2nd pull was at 1:46am.

5.15.   The 3rd pull was at 1:48am.

5.16.   The 4th pull was at 1:50am

5.17.   The 5th pull was at 1:52am.

5.18.   The 6th pull was at 1:55am, and the Kiwi vacuum popped off for the first time. Dr. Rittenhouse reapplied the vacuum at this time.

5.19.    The 7th pull was at 1:56 am, the vacuum popped off for the second time at 1:57 am.

5.20.   The vacuum was reapplied and the 8th pull was 2:00 am.

5.21.   The vacuum popped off for the third time at 2:01 am.

5.22.   The vacuum was reapplied. The 9th pull was at 2:06 am.

5.23.   The 10th pull was 2:07 am, the vacuum popped off for the fourth time at 2:09 am.

5.24.   Dr. Rittenhouse pulled 6 times more than the manufacturer's guidelines permitted and 2 times more pop-offs than permitted by the manufacturer's guidelines.

5.25.   Finally, at 2:13 am, a cesarean section was called STAT for extreme fetal distress and baby girl K.D., was delivered on April 11, 2019, at 2:40 am by STAT cesarean section.

5.26.   At delivery, baby girl K.D. was noted to be severely depressed and acidotic with significant molding, caput and edema of her head. APGAR scores were documented as 1 at 1 minute, 2 at 5 minutes and 5 at 10 minutes. She was limp, not breathing and required a full

resuscitation at the time of birth and ultimately was transferred to a neonatal intensive care unit (NICU).

5.27. The NICU doctors diagnosed baby girl K.D., a minor, with a fractured skull, a bleed in her brain (subgaleal hemorrhage), seizures and hypoxic ischemic encephalopathy (a type of newborn brain damage caused by oxygen deprivation and limited blood flow).

5.28. The injudicious and prolonged vacuum attempt and delay in performing a timely caesarean section directly and proximately caused baby girl K.D.'s skull to fracture and to experience severe traumatic injuries.

5.29. All of baby girl K.D.'s injuries were due to the skull fracture and trauma, and a lack of oxygen that occurred within the last 20-30 minutes of her birth, while under the care and supervision of Dr. Rittenhouse.

5.30. As a direct and proximate cause of the Defendants' negligence, Minor Plaintiff baby K.D. is permanently catastrophically injured. She has been noted to be developmentally delayed and is unable to sit up on her own, crawl or walk. For the rest of her life she will be unable to work and act independently, and will require medical and vocational treatment and continuous care.

## CAUSES OF ACTION

### COUNT I

## Negligence against
## Eric Rittenhouse, M.D. a covered agent, servant, and/or employee of the United States of America,

6.1.   Plaintiffs incorporated by reference the preceding paragraphs as if the same were set forth herein at length.

6.2.   Through its employee, agent, or servant, Dr. Rittenhouse, the Defendant, United States of America, failed to conform with the applicable standard of care, and was negligent in one or more of the following respects:

(a) Failure to properly manage the labor of Plaintiff Rylee Smyth and the delivery of Plaintiff K.D., a minor;

(b) Failure to properly manage, interpret and monitor the fetal heart rate and uterine contractions of Plaintiff Rylee Smyth throughout her labor;

(c) Failure to ensure that Plaintiff K.D., a minor, received proper oxygenation throughout labor and delivery;

(d) Failure to follow the recommendations of the manufacturer of the Kiwi vacuum with respect to its use in delivery, including but not limited to excessive use, excessive popoffs, continued use without adequate descent;

(e) Failure to conform with the applicable standard of care in using the Kiwi vacuum in delivery, including but not

limited to excessive use, excessive popoffs, continued use without adequate descent;

(f) Failure to recognize the significance of the patients' condition;

(g) Failure to prevent harm to mother and baby.

(h) Failure to properly manage the use of Pitocin during the labor of Plaintiff Rylee Smyth and the delivery of Plaintiff K.D., a minor;

(i) Failure to perform a timely c-section;

(j) Failure to conform to the requisite standards of care relative to Plaintiffs' care;

(k) Failure to provide and render reasonable medical care to Plaintiffs;

(l) Failure to maintain an accurate and complete medical record;

(m) Failure to fully and completely discuss Plaintiffs' medical condition and treatment with Plaintiffs;

(n) Failure to make a proper and appropriate diagnosis and provide or order proper and appropriate treatment for Plaintiffs;

(o) Failure to have the proper qualifications to care for Plaintiffs;

(p) Failure to remain abreast of current knowledge, thinking and/or techniques in the field of obstetrics and neonatal care;

6.3. At all times relevant to this lawsuit, Eric Rittenhouse, M.D. was a covered agent, servant and/ or employee, or representative of the United States, who was negligent and caused the injuries and damages sustained by the Plaintiffs. As a result of the aforementioned Defendant's negligent acts and omissions, the Plaintiffs suffered mental and physical pain, severe permanent disability, suffering and humiliation. The Plaintiffs also suffered the loss of the pleasures and enjoyment of life and the loss of their future income and earnings.

**WHEREFORE**, Plaintiffs Rylee Smyth and Andrew Desher, Individually and as parents and natural guardians of K.D., a minor, demands judgment against Eric Rittenhouse, M.D. a covered agent, servant, and/or employee of the United States of America, jointly and severally, in an amount in excess of $75,000.00 plus interest, costs and such other relief as this Court deems appropriate.

## COUNT II

**Negligent Infliction of Emotional Distress against Eric Rittenhouse, M.D. a covered agent, servant, and/or employee of the United States of America,**

6.4     Plaintiffs incorporated by reference the preceding paragraphs as if the same were set forth herein at length.

6.5     At all times relevant hereto and in the circumstances of this case and in her relationship to Plaintiffs, Dr. Rittenhouse, a covered agent, servant, and/or employee of the United States of America, owed a duty of care for the emotional well-being of Plaintiffs.

6.6     Dr. Rittenhouse, a covered agent, servant, and/or employee of the United States of America, breached his duty of care for the emotional well- being of Plaintiffs as set forth more fully above.

6.7     As a result of Dr. Rittenhouse's aforesaid negligence, carelessness, and/or recklessness, Plaintiffs have been caused to suffer emotional distress, which has manifested itself psychologically, emotionally and physically in the form of, *inter alia*, depression, fear, anxiety, shock, loss of appetite, sleep disturbance, physical and emotional fatigue, which conditions are expected to continue into the indefinite future.

6.8   Plaintiffs have sustained the aforementioned emotional distress as a direct result of the negligence, carelessness and/or recklessness of Dr. Rittenhouse, as set forth above.

6.9   As a result of the aforementioned fear, anxiety and emotional distress, Plaintiffs have sustained, are sustaining, and will/may sustain a loss of the pleasures and enjoyments of life.

6.10  Based upon the relationship between Dr. Rittenhouse, a covered agent, servant, and/or employee of the United States of America, and Plaintiffs, and Defendant Rittenhouse's aforementioned acts of negligence, carelessness and/or recklessness, Dr. Rittenhouse could have and should have reasonably foreseen that the Plaintiffs would suffer severe fear, anxiety, shock, and emotional distress due to Dr. Rittenhouse's negligent acts and omissions, as set forth within this Complaint.

**WHEREFORE**, Plaintiffs Rylee Smyth and Andrew Desher, Individually and as parents and natural guardians of K.D., a minor, demands judgment against Eric Rittenhouse, M.D. a covered agent, servant, and/or employee of the United States of America, jointly and

severally, in an amount in excess of $75,000.00 plus interest, costs and such other relief as this Court deems appropriate.

## DAMAGES

7.1.     Because of Defendant's negligence, the Plaintiffs have suffered, and continue to suffer, severe injuries, including past and future physical and mental pain and suffering; past and future medical, healthcare, and attendant care expenses; permanent disfigurement; past and future permanent physical impairment; loss of enjoyment of life; loss of earnings and earning capacity; and out of pocket expenses and other pecuniary losses. Such injuries are, in reasonable probability, permanent. Plaintiffs bring this suit to recover all damages cognizable under the applicable state and federal law resulting from the injuries to them.

7.2.     Because of the negligence of the United States employee healthcare provider, K.D., a minor, sustained damages and injuries including:

(a)     Reasonable and necessary past and future medical expenses;

(b)     Reasonable and necessary past and future attendant, home health, and nursing care expenses;

(c)     Past loss of earnings;

(d)     Future loss of earning capacity;

(e) Past and Future physical impairment;

(f) Past and Future physical disfigurement;

(g) Past and future pain and suffering;

(h) Past and future mental suffering;

(i) Past and future out of pocket expenses and costs;

(j) Past and future injury to K.D., a minor, peace and happiness; and

(k) All other damages to which she is entitled to under the applicable federal and state laws.

## RELIEF REQUESTED

Plaintiffs request that the United States be cited in terms of law to appear and answer this lawsuit. Upon final trial, Plaintiffs seek judgment against the United States for the amount of actual damages and for such other and different amounts that they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in the prosecution of this lawsuit; and for such other relief, in law or equity, both general and special, to which the Plaintiff may show themselves entitled to and to which the Court believes them deserving.